FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 03, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PERRY C. B., <br><br>                  Plaintiff, <br><br>   v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                  Defendant. | NO:  1:22-CV-3161-RMP <br><br> ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Perry C. B.[1], ECF No. 9, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 11.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").  *See* ECF No. 9 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and middle and last initials.

Having considered the parties' briefs, ECF Nos. 9 and 11; Plaintiff's reply, ECF No. 13; the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court denies judgment for Plaintiff and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

### General Context

Plaintiff protectively filed for DIB on approximately March 9, 2020, alleging an onset date of March 30, 2018.  *See* Administrative Record ("AR") 16, 86. Plaintiff was 51 years old on the alleged disability onset date and asserted that he was unable to work due to heart issues with a history of heart attacks; centralized sleep apnea; hypertension; depression; unexplained fatigue; lower back pain; vision issues; bilateral hearing loss; tinnitus; and centralized sleep apnea.  AR 86–87. Plaintiff alleged that he stopped working prior to March 30, 2018, because of his conditions.  AR 87.  Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 139–41, 146–47.

On July 13, 2021, Plaintiff appeared by telephone, represented by his attorney Kathryn Higgs, at a hearing held by Administrative Law Judge ("ALJ") Linda Harris Crovella from Richmond, Virginia.  AR 47–85.  The ALJ heard from Plaintiff as well as vocational expert ("VE") Robert Jackson.  AR 49–84.  ALJ Crovella issued

an unfavorable decision on August 4, 2021, and the Appeals Council denied review. AR 1–6, 16–28.

### ALJ's Decision

Applying the five-step evaluation process, ALJ Crovella found:

**Step one:** Plaintiff meets the insured status requirements of the Act through December 31, 2023.  AR 18.  Plaintiff did not engage in substantial gainful activity since his alleged onset date of March 30, 2018.  AR 18 (citing 20 C.F.R. § 404.1571 *et seq*).

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit his ability to perform basic work activities: acute myocardial infarction, coronary artery disease, and obesity, pursuant to 20 C.F.R. §§ 404.1520(c).  AR 18.  The ALJ memorialized that she considered whether the record supported finding other impairments referred to in Plaintiff's record in be severe, including: degenerative disc disease, history of deep venous thrombosis with deep venous reflux, hyperlipidemia, obstructive sleep apnea, vision impairment, hearing loss (not treated with cochlear implant), hypertension, asthma, and seasonal allergies.  AR 19.  With respect to Plaintiff's mental impairments, the ALJ considered the "paragraph B" criteria and found that Plaintiff has only a mild functional limitation in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 3

or managing oneself.  AR 19–20.  The ALJ found: "Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere."  AR 20 (citing 20 C.F.R. § 404.1520a(d)(1)).  The ALJ expressed that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing Plaintiff's residual functional capacity.  AR 20.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  The ALJ memorialized that Plaintiff's cardiac impairments do not meet listings 4.02 or 4.04.  AR 20–21.  The ALJ further recorded that she evaluated obesity pursuant to Social Security Ruling ("SSR") 19-2p and determined that, "[b]ased on the medical evidence of record, . . . obesity does not equal a listing, alone or in combination with another impairment."  AR 21.  The ALJ further found that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment."  AR 21.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions: he can frequently climb ramps or stairs and stoop, kneel, crouch, and crawl; he can never climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to extreme heat, loud noise, and hazards.  AR 21.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 22.

**Step four:** The ALJ found that Plaintiff is unable to perform any past relevant work.  AR 26 (citing 20 C.F.R. § 404.1565).

**Step five:** The ALJ found that Plaintiff has at least a high school education; was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date; and that transferability of job skills is not material to the determination of disability because Plaintiff is "not disabled" under the Medical-Vocational Rules, whether Plaintiff has transferable job skills.  AR 27 (citing 20 C.F.R. §§ 404.1563 and 404.1564; SSR 82-41; 20 C.F.R. pt. 404, subpt. P, app'x 2).  The ALJ found that given Plaintiff's age, education, work experience, and

RFC, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. AR 26–27. Specifically, the ALJ recounted that the VE identified the following representative occupations that Plaintiff could perform with the RFC: cashier (light, unskilled, with around 570,000 jobs nationally) and marker (light, unskilled work, with around 129,000 jobs nationally). AR 28. The ALJ concluded that Plaintiff has not been disabled within the meaning of the Act from the alleged onset date of March 30, 2018, through the date of the decision. AR 28.

Plaintiff sought review of the ALJ's decision in this Court. ECF No. 1.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,

1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

1989).  Substantial evidence "means such evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

[Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark

v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

record, not just the evidence supporting the decisions of the Commissioner.

*Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the

proper legal standards were not applied in weighing the evidence and making a

decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

1988).  Thus, if there is substantial evidence to support the administrative findings,

or if there is conflicting evidence that will support a finding of either disability or

nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death, or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  Step one determines if they are engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the

Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past. If the claimant can perform their previous work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering their residual functional capacity and age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation. *Meanel*, 172 F.3d at 1113. The

burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

Plaintiff's brief raises the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously fail to include Plaintiff's mental health and hearing loss as severe impairments at step two?

2.    Did the ALJ erroneously discount Plaintiff's subjective symptom statements?

3.    Did the ALJ err in her evaluation of Plaintiff's medical source opinions?

4.    Did the ALJ err in formulating Plaintiff's RFC, resulting in harmful error at step five?

### Step Two

Plaintiff argues that ALJ Crovella should have found that Plaintiff's hearing loss and mental health issues seriously limit his ability to conduct basic work activities. ECF No. 9 at 6–7. With respect to hearing loss, Plaintiff argues that audiograms in Plaintiff's record "support that [Plaintiff] experiences mild bilateral hearing loss, which would certainly impact his ability to communicate over the phone or communicate in noisy surroundings." *Id.* at 7. With respect to Plaintiff's mental health issues, Plaintiff argues that "the ALJ mischaracterizes the evidence in

the medical records, and disregards all relevant information in a chart note and focuses instead on the one piece of evidence that would support a mild finding. This level of cherry-picking through evidence has routinely been admonished." *Id.* (citing *Renee N. v. Kijakazi*, No. 6:20-cv-01131-SB, 2021 U.S. Dist. LEXIS 192017 (D. Or. Oct. 5, 2021); *Thompson v. Comm'r of Soc. Sec.*, No. 2:20-cv-3-KJN, 2021 U.S. Dist. LEXIS 90929, 2021 WL 1907488, at *7 (E. D. Cal. May 12, 2021); *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KHN, 2021 U.S. Dist. LEXIS 93526, 2021 WL 1966202, at *6 (E.D. Cal. May 17, 2021)).  Plaintiff especially faults the ALJ for finding that Plaintiff is only mildly impaired in his ability to interact with others.  *See id.* at 8.  Plaintiff notes that the ALJ reasoned that Plaintiff regularly speaks with his parents, enjoys spending time with his girlfriend, and is a member of "several social clubs[,] but Plaintiff asserts that substantial evidence does not support that he still belongs to social clubs or that he gets along with his girlfriend or family members.  *See id.* at 8–9 (citing AR 267, 451, 462, 464, and 468 for the proposition that Plaintiff mostly stays indoors, although he used to enjoy outdoor activities, and is moody and irritable, to the detriment of his relationships).  Plaintiff adds that the ALJ does not explain how Plaintiff's daily activities are inconsistent with the limitations that Plaintiff describes.  *Id.* at 10.

The Commissioner responds that Plaintiff does not satisfy his burden of showing that mild hearing loss caused more than minimal limitation in his

functioning, and the ALJ relied on substantial evidence in finding that Plaintiff has mild restrictions in all four functional areas.  ECF No. 11 at 3–4 (citing AR 19–20, 245, 266–68, 447, 455, 459, 471, and 473).

At step two, an ALJ may find impairments or combinations of impairments to be non-severe "if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *see also* SSR 85-28, 1985 SSR LEXIS 19 at *8, 1985 WL 56856, at *3. An ALJ's error at step two is not reversible if the ALJ resolves step two in claimant's favor and otherwise properly accounts for Plaintiff's limitations. *See Buck v. Berryhill*, 869 F.3d 1030, 1048–49 (9th Cir. 2017).

ALJ Crovella resolved step two in Plaintiff's favor by finding that Plaintiff has severe, medically determinable impairments in the form of acute myocardial infarction, coronary artery disease, and obesity.  AR 18–19.  ALJ Crovella memorialized that she considered Plaintiff's hearing loss and mental impairments, as well as other health issues.  AR 19.

With respect to Plaintiff's hearing loss, the ALJ first noted that Plaintiff had not been treated with a cochlear implant.  AR 19.  The ALJ next cited a record from April 19, 2018, in which Plaintiff had been diagnosed with "mild sensorineural hearing loss, bilaterally" and noted that Plaintiff did not testify to any significant limitations from hearing loss.  AR 19.

In addition to stating that Plaintiff has only "mild" hearing loss, the record

cited by the ALJ contains the finding that "[c]ertainly [Plaintiff's] hearing loss . . . is

not at all disabling."  AR 329.   This is substantial evidence for the ALJ's treatment

of Plaintiff's hearing loss at step two.  Moreover, Plaintiff cites to nothing for his

assertion that his hearing loss "would certainly impact his ability to communicate

over the phone or communicate in noisy surroundings" and does not carry his

burden of showing that his hearing loss has more than a minimal effect on his ability

to work.  *See* SSR 85-28; ECF No. 13 at 3 (Plaintiff's reply citing only to the same

April 2018 record cited by the ALJ and an Adult Function Report in which Plaintiff

reported having hearing damage requiring him to wear hearing aids, but not stating

any effect on his ability to work).

With respect to Plaintiff's mental health impairments, the ALJ found Plaintiff

only mildly impaired in all four functional areas.  AR 19–20.  As the Commissioner

recites in her brief, the ALJ cited to evidence that Plaintiff was able to count change,

drive a car, and follow instructions and demonstrated normal ("ok") memory and

normal judgment and insight in mental examination.  AR 19, 455, 459, 471, and 473.

The ALJ also cited to a record from April 7, 2020, two years after the onset date, in

which Plaintiff reported belonging to snowmobile, motorcycle, and archery clubs

and presented as "open, friendly and cooperative."  AR 444–47.  The ALJ further

cited to evidence supporting that Plaintiff is relatively capable of adapting and

managing himself, including demonstrating a capacity to travel and drive long

distances in his camper trailer and manage his own care, chores, and finances.  AR

20 (citing AR 263–70); *see also* AR 536 (Plaintiff reporting to a physician that he no

longer stressed out over daily events and was traveling to Alaska after previously

completing a three-week trip to get a side-by-side).  Based on this substantial

evidence, the ALJ's evaluation of Plaintiff's mental impairments at step two was

reasonable.  Even if the Court were to find error in the ALJ's step two analysis,

Plaintiff has not shown that the error was harmful, in light of the ALJ's

determination that Plaintiff has other severe impairments and the memorialization

that the ALJ considered all medically-determinable impairments, including those

that are not severe, in the remaining steps of the sequential analysis.

Accordingly, the Court finds no reversible error at step two and denies

judgment to Plaintiff on this ground.

### Subjective Symptom Statements

Plaintiff argues that, "if the Court finds that the ALJ failed to consider

[Plaintiff's] hearing loss and mental health impairments as severe and remands this

case for further consideration, the claimant's symptom statements will also need to

be re-examined, especially if the mental health conditions are found to be severe, as

that can impact the analysis of the claimant's presentation and credibility."  ECF No.

9 at 12.  In addition, Plaintiff asserts that the ALJ did not provide specific or rational

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING
JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 14

explanations for finding Plaintiff's symptom statements not consistent with the medical records. *Id.* at 12. Specifically, Plaintiff contends that the ALJ did not explain how Plaintiff's complaint of being shaky and irritable prior to meals, and feeling fatigued after eating, is undermined by a medical record showing a normal physical examination when "[t]here is no indication that this examination was done before or after a meal or was meant to test the irritability or lethargy of the claimant[.]" *Id.* (citing AR 23). Plaintiff summarizes that, "[h]ad the ALJ found the claimant's testimony to be consistent with the record the ALJ would not have been able to find the claimant capable of employment based on his level of fatigue and difficulty getting along with others." *Id.* at 13. Plaintiff adds, "had the ALJ given claimant's testimony greater weight, the ALJ should have also included the rate at which the claimant would be off-task and absent from work due to his impairments, and would have included issues with open hostility in the workplace, and the ALJ would not have been able to find claimant capable of performing even light level work." *Id.* at 13–14. Lastly, Plaintiff contends that the ALJ failed to consider the third-party function report of Plaintiff's girlfriend, which Plaintiff argues "would be highly probative given part of the reason the ALJ found claimant's mental health symptoms not severe is because of that [sic] relationship with his on and off again girlfriend." *Id.*

The Commissioner responds that the ALJ was permitted to discount Plaintiff's subjective complaints for being inconsistent with his activity level. ECF No. 11 at 7 (citing 20 C.F.R. § 404.1529(c)(3)(i)). The Commissioner cites to the evidence that the ALJ cited supporting that Plaintiff lives and travels long distances in a camper trailer, exercises, belongs to clubs, snowboards, rides motorcycles, and helps his girlfriend with household tasks. *Id.* at 7–8 (citing AR 24, 56–59, 327, 447, 466, 468, 479, and 535). The Commissioner also argues that the ALJ reasonably determined that the medical evidence did not substantiate Plaintiff's allegations and relied on substantial evidence showing that Plaintiff's heart disease is stable and did not require aggressive interventions during the relevant period. *Id.* at 8 (citing AR 22–24, 338, 340–43, 347, 356, 386–87). The Commissioner submits that Plaintiff "fails to show how the ALJ's decision lacked sufficient specificity." *Id.* at 10. The Commissioner further argues that any error with respect to the ALJ's treatment of statements from Plaintiff's girlfriend was harmless because they "were substantially the same" as Plaintiff's own discounted testimony. *Id.* at 11.

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 16

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this case.  Plaintiff alleged the following impairment, as summarized in the ALJ's decision:

> The claimant alleges disability because of heart disease, sleep apnea, hypertension, depression, fatigue, impaired vision, and hearing loss. The claimant testified that he currently lives in a camper trailer. He testified that he had to stop working, due to his heart attacks and inability to cope with work stress. The claimant testified that his chest pain and fatigue worsen with exposure to sun and heat. The claimant testified that he can lift and/or carry about 20 to 30 pounds. He can stand for approximately 10 to 15 minutes at a time, and he can sit about 30 minutes. The claimant testified that he can walk for about thirty minutes in a grocery store if he uses a shopping cart for support. In a function report, he estimated that he can walk about 1000 feet. The claimant's girlfriend reported that the claimant has difficulty with hearing, memory, task completion, concentration, and getting along with others. The claimant alleges problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, climbing, and seeing, as well as difficulty with memory, task completion, concentration, understanding, following instructions, and getting along with others.

AR 22 (citing AR 223, 239, 268, and 304–07).

The ALJ found that Plaintiff's "testimony that he is unable to sustain work activity is inconsistent with his self-reported daily activities, and medical history, which support greater functional abilities."  AR 24.  The ALJ cited to Plaintiff's

hearing testimony that he regularly runs errands, drives his camper on lengthy road trips, socializes with friends, swims, and completes household chores.  AR 60–64. The ALJ also cites to medical records indicating that Plaintiff reported exercising on a treadmill and with weights in April 2018 and reported belonging to snowmobile, motorcycle, side-by-side, and archery clubs in 2020.  AR 327, 436, 447, and 457. The ALJ further cited a June 2020 mental health treatment record indicating that Plaintiff reported that he repeatedly "perform[ed] Herculean jobs like mowing the field" for his girlfriend.  AR 468.  These citations support that Plaintiff was not as debilitated as he alleged.  Whether or not the record could support a different interpretation, the ALJ's reasoning is supported by substantial evidence.  *See Hill v. Astrue*, 365 Fed. Appx. 808, 809 (9th Cir. 2010) (recognizing that courts must defer to the Commissioner's decision if evidence exists to support more than one rational interpretation).  Accordingly, the Court finds no error with respect to the ALJ's treatment of Plaintiff's subjective symptom statements.  As the report of Plaintiff's girlfriend is cumulative of Plaintiff's own testimony, the Court further finds no error in the ALJ's treatment of that third-party statement.  *See* AR 234–41. The Court denies judgment to Plaintiff on this ground.

### *Medical Source Opinions*

Plaintiff argues that the ALJ failed to properly assess the medical opinions in the record when the ALJ found the opinions of the state agency medical consultants

1    more persuasive than several treating providers.  ECF No. 9 at 16 (citing AR 24–26).

2    Although Plaintiff assigns error to the treatment of three treating sources' opinions,

3    Plaintiff pursues her claim of error only with respect to David Krueger, M.D. on

4    reply.  *See* ECF Nos. 9 at 18; 13 at 8; LCivR 7.  Plaintiff argues that the Plaintiff's

5    participation in certain physical activities does not undermine the validity of Dr.

6    Krueger's opinion that Plaintiff would have significantly more limitations than what

7    the ALJ provided for in the RFC because Dr. Krueger was aware of these activities

8    when he formulated his opinion.  ECF No. 13 at 7–8.  Plaintiff asserts that as

9    Plaintiff's longtime treating provider, Dr. Krueger is in a "much better position to

10    offer an opinion regarding [Plaintiff's] limitations than state agency consultants who

11    are basing the entirety of their opinions on what was written down in the chart

12    notes."  *Id.*

13          The Commissioner asserts that the ALJ reasonably found Dr. Krueger's

14    opinion unpersuasive based on its inconsistency with contemporaneous treatment

15    notes and because Dr. Krueger "made vague statements and recorded

16    inconsistencies."  ECF No. 11 at 14–15 (citing AR 25, 58–59, 60–61, 340, 344, 349–

17    50, 468, 541, 554, and 555).

18          The regulations that took effect on March 27, 2017, provide a new framework

19    for the ALJ's consideration of medical opinion evidence, and require the ALJ to

20    articulate how persuasive she finds all medical opinions in the record, without any

21

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING
JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 19

1    hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the

2    Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18,

3    2017).  Instead, for each source of a medical opinion, the ALJ must consider several

4    factors, including supportability, consistency, the source's relationship with the

5    claimant, any specialization of the source, and other factors such as the source's

6    familiarity with other evidence in the claim or an understanding of Social Security's

7    disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

8         Supportability and consistency are the "most important" factors, and the ALJ

9    must articulate how she considered those factors in determining the persuasiveness

10    of each medical opinion or prior administrative medical finding.  20 C.F.R. §

11    404.1520c(b)(2).  With respect to these two factors, the regulations provide that an

12    opinion is more persuasive in relation to how "relevant the objective medical

13    evidence and supporting explanations presented" and how "consistent" with

14    evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).

15    The ALJ may explain how she considered the other factors, but is not required to do

16    so, except in cases where two or more opinions are equally well-supported and

17    consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).  Courts also must

18    continue to consider whether the ALJ's finding is supported by substantial evidence.

19    *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to

20    any fact, if supported by substantial evidence, shall be conclusive . . . .").

21

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING
JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 20

1    Prior to revision of the regulations, the Ninth Circuit required an ALJ to

2 provide clear and convincing reasons to reject an uncontradicted treating or

3 examining physician's opinion and provide specific and legitimate reasons where the

4 record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654

5 (9th Cir. 2017).  However, the Ninth Circuit has held that the Social Security

6 regulations revised in March 2017 are "clearly irreconcilable with [past Ninth

7 Circuit] caselaw according to special deference to the opinions of treating and

8 examining physicians on account of their relationship with the claimant." *Woods v.*

9 *Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22,

10 2022).  The Ninth Circuit continued that the "requirement that ALJs provide

11 'specific and legitimate reasons' for rejecting a treating or examining doctor's

12 opinion, which stems from the special weight given to such opinions, is likewise

13 incompatible with the revised regulations." *Id*. at *15 (internal citation omitted).

14    Accordingly, as Plaintiff's claim was filed after the new regulations took

15 effect, the Court refers to the standard and considerations set forth by the revised

16 rules for evaluating medical evidence.  *See* AR 16, 86.

17    Dr. Krueger completed a Medical Report Form for Plaintiff on May 28, 2021.

18 AR 554–55.  Dr. Krueger indicated that he had first seen Plaintiff in 2016 and had

19 last seen Plaintiff on May 11, 2021.  AR 554.  Dr. Krueger opined that Plaintiff: (1)

20 can sit for more than two hours at a time; (2) can sit and can stand for a total amount

21

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING
JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 21

of two hours, each, in an eight-hour working day; (3) would not require a job that permits shifting positions at will from sitting, standing, or walking; (4) would likely miss approximately one day per month if working a full-time schedule; (5) occasionally experiences symptoms severe enough to interfere with attention and concentration needed to perform simple work tasks; (6) can frequently lift and carry fewer than ten pounds, can occasionally carry ten or twenty pounds, and can rarely carry fifty pounds in a competitive work situation; and (7) can perform low impact, non-lifting/climbing, and mostly sedentary work.  AR 554–55.  Dr. Krueger further circled one hour for the amount of time that Plaintiff can stand before needing to "sit down, walk around, etc.," but Dr. Krueger added a question mark next to his selection.  AR 554.

The ALJ found Dr. Krueger's not persuasive to the extent that Dr. Krueger "supported his assessments by referencing the claimant's sleep apnea, fatigue, permanent mild to moderate cardiac impairment, low ejection fraction, and dyspnea" when "contemporaneous treatment notes are consistent with greater exertional abilities."  AR 25.  The ALJ cited records for the proposition that Plaintiff "has an excellent exercise capacity for his age, and he reported that he is active and currently losing weight."  AR 25 (citing AR 340, 344). The ALJ cited two treatment records to show that Plaintiff told his treatment providers that he is able to snowmobile, including pulling his machine out of the snow, and can mow a large lawn.  AR 25

1  (citing AR 349, 468).  In addition, the ALJ found Dr. Krueger's opinion "less

2  persuasive" because of vague statements and inconsistencies.  AR 25.  The ALJ

3  notes "Dr. Krueger's uncertainty regarding the claimant's functioning, as he places a

4  question mark next to how long the claimant can stand at one time" and "also

5  indicates uncertainty regarding the length of unscheduled breaks that the claimant

6  would require."  AR 25.  The ALJ continues that "[t]he opinion is internally

7  inconsistent, as Dr. Krueger states that the claimant can sit more than two hours at

8  one time, but he also states that the claimant can only sit about two hours, total, in a

9  workday."  AR 25.  Furthermore, the ALJ observes that although Dr. Krueger opines

10  that Plaintiff "can perform a 'mostly sedentary' job," Dr. Krueger "also states that he

11  can lift and carry 20 pounds occasionally."  The ALJ cites to a treatment record

12  "consistent with a greater lifting and/or carrying ability, as the claimant even told

13  another physician that he could lift up to 50 pounds at a time, or lesser weights more

14  frequently."  AR 25 (citing AR 541).

15  The records cited by the ALJ indeed indicate that Plaintiff has "excellent

16  exercise capacity," and reported to Dr. Krueger in 2019 that, despite frustrations

17  with his lack of endurance, he was doing a lot of exercise, including an instance

18  where "he had to horse around on his snowmobile and pull the sled out of the snow

19  [and afterward] was a little sore in the chest."  AR 340, 344, and 349.  Furthermore,

20

21

Dr. Krueger's opinion itself provides substantial evidence for the ALJ's reasoning that the opinion is internally inconsistent.  *See* AR 554–55.

Plaintiff's argument that Dr. Krueger was aware of Plaintiff's activities does not demonstrate that Dr. Krueger's opinion was supported or that the ALJ erred in her analysis.  *See* ECF No. 13 at 7–8 ("The ALJ pulled these notes regarding the claimant's activities directly from Dr. Kruegar's notes, indicating that the treating provider knew about these activities, and still believed that claimant would have significantly more limitations than what the ALJ provided for in the RFC.").  Rather, the ALJ cited to evidence to support her determination that Dr. Krueger's opinion was unsupported by the medical record and was internally inconsistent.  The ALJ properly considered the most important factors, supportability and consistency, in finding Dr. Krueger's opinion "less persuasive."  AR 25.

### Step Five

Plaintiff contends that the ALJ erred at step five because the VE testified in response to a hypothetical that was incomplete due to the ALJ's allegedly improper consideration of Plaintiff's subjective symptom testimony and the medical opinion evidence.  ECF No. 13 at 8.  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflect all of a claimant's limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The ALJ is not bound to accept as true the restrictions presented in a hypothetical

ORDER DENYING JUDGMENT TO PLAINTIFF AND GRANTING
JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 24

question propounded by a claimant's counsel. *Osenbrock*, 240 F.3d at 1164. The ALJ may accept or reject these restrictions if they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Plaintiff's argument assumes that the ALJ erred in his treatment of Plaintiff's subjective symptom testimony and the medical source testimony and in formulating the RFC. As discussed above, the ALJ's assessment of this evidence was not erroneous. Therefore, the RFC and hypothetical contained the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony that the VE gave in response to the hypothetical was proper. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005). The Court grants judgment to the Commissioner on this final ground.

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Opening Brief, **ECF No. 9**, is **DENIED**.

2. Defendant the Commissioner's Brief, **ECF No. 11**, is **GRANTED**.

4. Judgment shall be entered for Defendant.

1    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

2  Order, enter judgment as directed, provide copies to counsel, and **close the file** in

3  this case.

4    **DATED** November 3, 2023.

5

6                                  *s/ Rosanna Malouf Peterson*
                                  ROSANNA MALOUF PETERSON
7                                  Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21